USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

PARIS DRAKE,                            :

               Petitioner,     :            **OPINION**

     - against -                    :            07 Civ. 7015 (DC)

ROBERT WOODS,                          :

              Respondent.    :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   OFFICE OF THE APPELLATE DEFENDER
              Attorney for Petitioner
                  By: Richard M. Greenberg, Esq.
              11 Park Place, Suite 1601
              New York, New York  10017

              ROBERT M. MORGENTHAU, ESQ.
              District Attorney, New York County
              Attorney for Respondent
                  By: Mark Dwyer, Esq.
                     Assistant District Attorney
              One Hogan Place
              New York, New York  10013

**CHIN, District Judge**

        Paris Drake petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Following a jury trial in the Supreme Court of New York, New York County, Drake was convicted on December 13, 2000 of Assault in the First Degree, N.Y. Penal Law § 120.10(1) (McKinney 2004), and Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02(1) (McKinney 2000).  He was sentenced to concurrent terms of imprisonment of 25 years and 3.5 to 7 years.

        Drake contests his conviction on the grounds that the trial court violated (1) his due process right to a fair trial,

and (2) his Sixth Amendment right of confrontation. For the
reasons that follow, the petition is denied.

## BACKGROUND

### A.   The Facts

The following is a summary of the facts adduced during
the trial.

#### 1.   The Assault

At about 3:00 p.m. on November 16, 1999, 27-year old
Nicole Barrett was standing on the corner of 42nd Street and
Madison Avenue in midtown Manhattan, when a man -- determined by
the jury to be petitioner -- hurled a large brick towards her.
(Tr. 59-61, 135-36). The brick struck her in the head, causing
permanent brain damage and other long-term injuries. (Id. at 33,
348-49). After throwing the brick, the man ran up Madison Avenue
and took a left turn on 43rd Street. (Id. at 139-40). Two
civilian witnesses chased the man across 43rd Street, but they
lost sight of him after he crossed Fifth Avenue. (Id. at 142,
225).

#### 2.   The Investigation

In the weeks following the incident, the police
received many tips about individuals who might have committed the
crime. (Id. at 540-42, 557, 563). An early tip came from a
social worker at a homeless shelter in Brooklyn, who reported
that a resident of the shelter, Clement Tikiba, matched the

---

<sup>1</sup> References to "Tr." are to the transcript of Drake's
trial.

description of the perpetrator. (Id. at 924). Three eyewitnesses to the crime, Witness A,[2] Anthony Caggino, and Richard DePetris, identified a photo of Tikiba as resembling the perpetrator. (Id. at 104-07, 269-77, 736-37, 944-45). Efforts to locate Tikiba were unsuccessful. (Id. at 947).

On November 29, 1999, Paris Drake was arrested based on information from a man named Robert Fluken. (Id. at 505-06). On November 30, Witness A selected Drake out of a lineup as the man she had observed throwing a brick at Barrett. (Id. at 71-72). On December 1, 1999, Caggino saw Drake on a television broadcast and positively identified him as the perpetrator. (Id. at 238).

### 3. **The Indictment**

In December 1999, a grand jury in the Supreme Court, New York County, charged Drake with Attempted Murder in the Second Degree, three counts of Assault in the First Degree, two counts of Attempted Robbery in the First Degree, and one count of Criminal Possession of a Weapon in the Third Degree.

### B. **Prior Proceedings**

#### 1. **The Trial**

On November 13, 2000, the jury trial commenced before Judge Laura Visitacion-Lewis. The parties presented the testimony of eleven eyewitnesses: six for the prosecution and five for the defense. Two of the prosecution's eyewitnesses,

---

[2] This witness's name has been redacted by the Court to protect her privacy. She was identified by name at the trial. She will be referred to throughout this opinion as "Witness A."

Witness A and Caggino, identified Drake as the person they believed had attacked Barrett. (Id. at 72, 239). Three of the defense eyewitnesses -- Anne Drucker, Todd Michael Hardy, and Damon Segar -- testified that Drake was not or did not appear to be the perpetrator. (Id. at 792, 854, 885).

Prior to the trial, the prosecutor disclosed that one eyewitness, Witness A, had been returning from a psychotherapy session at the time of the incident and requested that the defense not inquire about the appointment at trial. (Pre-Trial Tr. ("PT") 58-60). According to the prosecution, this was Witness A's third visit to the therapist, with whom she would discuss "the general issues of her life." (Id. at 58-59). The prosecutor also disclosed that Witness A was taking "mild medication for anxiety." (Id. at 64). The court denied defense counsel's request for an in camera inspection of Witness A's psychiatric files and granted the prosecution's request to prohibit questioning about the psychotherapy session or Witness A's mental health history. (Id. at 66, 71).

The prosecution also presented two witnesses who testified that they had heard Drake admit to the assault. Shakir Pittman testified that while he was incarcerated at "the Tombs" in Manhattan, he had asked Drake, "[s]he didn't give you any money when you asked her for some?" to which Drake replied, "[y]eah, that rich white bitch deserved it." (Id. at 483). Pittman also testified that when he asked Drake "[w]hat did you hit her in the head with the brick for?" Drake told him that

- 4 -

"[s]he came out of her mouth something slick, and I cracked her in the brain-piece."  (Id. at 484).

Carl Fortner, a ticket scalper who also "hustle[d] cabs"[3] at Penn Station, testified about a conversation he had with Drake on November 24, 1999, when Fortner was being released from Rikers Island as Drake was being brought in.  (Id. at 399-402).  Fortner testified that Drake told him that he "got into some shit with some white bitch at Grand, and Ds may be looking for him."  (Id. at 405).  Fortner understood "Grand" to mean the area around Grand Central Station, including Madison Avenue and 42nd Street, and understood "Ds" to mean detectives.  (Id. at 405-06).

After testifying at trial, Fortner reportedly spoke to Pablo Guzman, a television reporter.  According to Guzman, Fortner told him something like "I don't think he hit that person with the brick, I don't think he's that kind of guy, you figure it out."  (Id. at 640).  Defense counsel asked permission to recall Fortner to question him about his statements to Guzman.  (Id. at 637).  Defense counsel contended that the statements contradicted Fortner's testimony regarding his motive to testify.  (Id. at 634-37).  Specifically, defense counsel pointed to Fortner's testimony that "when I saw [Drake's] picture in the paper, the shit clicked, oh, shit, that was wrong, that was, you know, a lady that could have been my mother you hit with the

---

[3]  Fortner described what it means to "hustle cabs" as follows:  "When people get off the train I ask if they need a cab.  You get the cab and charge them for the ride."  (Id. at 399).

- 5 -

brick." (Id. at 634-35). The court denied the request, finding that the statement was hearsay and was irrelevant because it consisted only of Fortner's opinion about Drake's culpability. (Id. at 640). Additionally, the court found the statement inadmissible for impeachment purposes because Fortner's subsequent statement did not contradict his professed motive for going to the police. (Id. at 641). Rather, the court gave weight to another portion of Fortner's testimony -- that "[i]f he hit that lady in the head with the brick, it was wrong" -- and found that Fortner's position was never that he had come forward because he was convinced of Drake's guilt. (Id. at 641).

Defense counsel also presented the testimony of Dr. Elizabeth Loftis, an expert in eyewitness identification who testified about factors that can distort eyewitness testimony. (Id. at 1001-13). Over defense counsel's objections, the court instructed the jury that Dr. Loftis's testimony could not be used "to discredit or accredit the reliability of eyewitness testimony in general or in this case." (Id. at 1176).

On November 29, 2000, after two declarations of deadlock (id. at 1245-46, 1265), the jury found Drake not guilty of Attempted Murder in the Second Degree, not guilty of two counts of Attempted Robbery in the First Degree, and not guilty of one count of Assault in the First Degree, but guilty of one count of Assault in the First Degree and Criminal Possession of a Weapon in the Third Degree. (Id. at 1304-05). On December 13, 2000, the court sentenced Drake to 25 years for Assault and a

- 6 -

concurrent indeterminate term of 3.5 to 7 years for Criminal
Possession of a Weapon. (Sentencing Tr. 34).

## 2. **The Appeals**

Drake filed a timely notice of appeal with the
Appellate Division, First Department. His appeal presented the
following claims: (1) the verdict was against the weight of the
evidence, (2) the trial court erred in precluding the jury's
consideration of Dr. Loftis's expert testimony, (3) Drake was
denied his confrontation rights and right to due process when the
trial court refused to allow defense counsel to recall Carl
Fortner, (4) Drake was denied his confrontation rights and right
to due process when the court refused to review Witness A's
psychiatric records or allow cross-examination regarding Witness
A's mental health history, (5) the trial court erred in failing
to admit exculpatory evidence, and (6) the trial court erred in
imposing the maximum sentence.

On June 16, 2005, the First Department unanimously
affirmed Drake's conviction. People v. Drake, 797 N.Y.S.2d 52
(1st Dep't 2005). The court ruled that the verdict was not
against the weight of the evidence, and that the trial court's
charge properly instructed the jury on the use of expert
testimony. Id. at 53. The court also found that the trial court
properly exercised its discretion in denying defendant's request
for an in camera inspection of Witness A's psychiatric records,
precluding inquiry about her psychiatric treatment, and denying
defense counsel's request to recall Fortner. Id. The First
Department rejected Drake's other claims without discussion. Id.

The Court of Appeals granted Drake's application for leave to appeal on October 20, 2005. People v. Drake, 839 N.E.2d 894 (N.Y. 2005). Drake again raised the trial court's instruction to the jury regarding the testimony of Dr. Loftis, the trial court's refusal to allow inquiry into Witness A's psychiatric history, and the trial court's refusal to allow defense counsel to recall Fortner. The majority affirmed, finding that the court's charge regarding expert testimony was not in error, and concluding, with regard to defendant's other claims, that "neither of these evidentiary determinations constituted an abuse of discretion." People v. Drake, 850 N.E.2d 630, 633 (N.Y. 2006). Judge George Bundy Smith dissented on the grounds that the court's jury charge "effectively negated Dr. Loftis' testimony," and that the trial court deprived Drake of his due process and confrontation rights when it failed to review Witness A's psychiatric records. Id. at 38-39 (Smith, J., dissenting).

## 3. The Instant Petition

Drake's habeas corpus petition, dated July 26, 2007, was received by this Court on August 7, 2007.

## DISCUSSION

Drake advances two grounds for federal habeas relief: First, that his confrontation and due process rights were violated when the trial court refused to allow defense counsel to recall Carl Fortner, and, second, that his confrontation and due process rights were violated when the trial court refused to conduct an in camera inspection of Witness A's psychiatric

- 8 -

records or allow defense counsel to cross-examine her about her psychiatric history.

## A. **Procedural Default**

Respondent contends that these claims should not be considered by this Court because Drake failed to raise the constitutional claims in the trial court. Accordingly, I address, as a preliminary issue, whether this failure constitutes procedural default.

### 1. **Applicable Law**

New York's contemporaneous objection rule, codified in N.Y. Crim. Proc. Law § 470.05 (McKinney 1994), provides that an issue is preserved for appeal as a matter of law only when the appellant objected on that ground during the trial. N.Y. Crim. Proc. Law § 470.05(2); Glenn v. Bartlett, 98 F.3d 721, 724 n.2 (2d Cir. 1996), cert. denied, 520 U.S. 1108 (1997). Therefore, if a party fails to assert a claim in the trial court, appellate courts generally will not consider the claim. N.Y. Crim. Proc. Law § 470.05(2); People v. Cona, 399 N.E.2d 1167, 1169-70 (N.Y. 1979). When a party appeals a trial court's evidentiary determination on constitutional grounds, the contemporaneous objection rule will bar consideration of the claim on appeal if the party did not raise a specific constitutional objection in the trial court. People v. Kello, 746 N.E.2d 166, 167 (N.Y. 2001).

A party whose claim is rejected on appeal in state court for failure to comply with a state procedural rule, such as New York's contemporaneous objection rule, may be precluded from

- 9 -

raising that claim in a federal habeas corpus petition. See
Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Garcia v.
Lewis, 188 F.3d 71, 79 (2d Cir. 1999). Rules of procedural
default in federal court dictate that even when a petitioner
presents a colorable federal constitutional claim, federal habeas
review is barred if the claim was denied by a state court on a
state procedural ground that is both "'independent' of the merits
of the federal claim and an 'adequate' basis for the court's
decision." Harris v. Reed, 489 U.S. 255, 260-61 (1989); see
Coleman, 501 U.S. at 729-30.

For a state law ground to be "independent and
adequate," the state appellate court "must actually have relied
on the procedural bar as an independent basis for its disposition
of the case." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809
(2d Cir. 2000) (citing Harris, 489 U.S. at 261-62). In addition,
the state procedural rule relied upon must not be "interwoven
with" federal law, Coleman, 501 U.S. at 733 (quoting Michigan v.
Long, 436 U.S. 722, 1038-40 (1983)), and must be "firmly
established and regularly followed" by the state. Garcia, 188
F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24
(1991)). The Second Circuit has held that the application of New
York's contemporaneous objection rule may constitute an
independent and adequate state ground that procedurally bars
federal habeas review. Id. at 79; see also Jones v. Duncan, 162
F. Supp. 2d 204, 213 (S.D.N.Y. 2001).

Because it may be difficult to determine whether a
state court based its decision on a state procedural rule or on

the merits of a federal claim, the state court's reliance on state law must be "clear from the face of the opinion." Fama, 235 F.3d at 809 (quoting Coleman, 501 U.S. at 735). Indeed, for habeas review to be barred, "the last state court rendering a judgment on the federal claim [must] clearly and expressly state[] that its judgment is based on a state procedural bar." Glenn, 98 F.3d at 724 (quoting Harris, 489 U.S. at 263).

The Second Circuit has further specified that if an appellate court affirms a conviction without an opinion, reliance on state law is considered "clear from the face of the opinion" as long as the relevant federal claims were not raised at trial and the opposing party argued the procedural bar on appeal. Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993). Reliance on state law is not considered "clear from the face of the opinion," however, when an appellate court states that an argument is "either unpreserved or without merit." Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006) (citing Fama, 235 F.3d at 810-11).

Finally, if a federal constitutional claim is denied on an "independent and adequate" state procedural ground, habeas review is barred "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Fama, 235 F.3d at 809.

## 2. **Application**

Because Drake's counsel failed to raise his federal constitutional objections to the trial court, the Appellate

Division or the Court of Appeals could have rejected these claims based on New York's contemporaneous objection rule. See N.Y. Crim. Proc. Law § 470.05; Glenn, 98 F.3d at 724 n.2. If his constitutional claims were rejected on these grounds, this Court would determine whether New York's contemporaneous objection rule is an "independent and adequate" state procedural rule in the circumstances here. Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003).

A failure to raise claims in the trial court, however, will only bar habeas review of those claims if "the last state court rendering a judgment on the federal claim clearly and expressly states that its judgment is based on a state procedural bar." Glenn, 98 F.3d at 724 (quoting Harris, 489 U.S. at 263). In Drake's case, the Court of Appeals did not "clearly and expressly state" that it was relying on a procedural bar in affirming the Appellate Division. The exact language of the Court of Appeals with regard to Drake's constitutional claims was that "neither of these evidentiary determinations constituted an abuse of discretion." People v. Drake, 850 N.E.2d at 633.

Respondent contends that the dismissal of these claims rested on procedural grounds because the Court of Appeals used the words "evidentiary determinations" without reference to the constitutional aspects of the claims. According to respondent, characterizing constitutional claims as "evidentiary determinations" is analogous to the affirmance without an opinion in Quirama, 983 F.2d at 14, and indicates dismissal based on a procedural bar. The Quirama rule is inapplicable, however, when

an appellate court issues an opinion stating the grounds for dismissal, because a state court decision that does not explicitly rest upon a procedural default should be assumed to have "considered the merits of [the defendant's] claim." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Indeed, in El v. Artuz, this Court held that an Appellate Division opinion stating that it "considered defendant's other arguments and [found] that they do not warrant reversal" was not a dismissal based on a state procedural rule because it stated the grounds for dismissal and did not explicitly rest on procedural default. 105 F. Supp. 2d 242, 249 (S.D.N.Y. 2000). Notably, this finding was unaffected by the Appellate Division's failure to make a specific reference to the Sixth Amendment basis for the petitioner's "other arguments." Id. Similarly, the Court of Appeals' reference to "evidentiary determinations" in this case does not signal that the dismissal rested on state procedural grounds. Rather, it implies an examination of the merits of the constitutional issues, and not a refusal to confront those issues based on procedural bar. Accordingly, federal habeas review is not barred by procedural default.

## B. The Merits

### 1. Applicable Law

#### a. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "placed a new restriction on the power of the federal courts to grant writs of habeas corpus to state

prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000). AEDPA
sets forth new standards of review that make it more difficult
for a habeas petitioner to obtain federal relief from a state
conviction. It provides that:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to any
> judgment of a state court shall not be
> granted with respect to any claim that was
> adjudicated on the merits unless the
> adjudication of the claim:
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"[C]learly established Federal law in § 2254(d)(1)
refers to the holdings, as opposed to the dicta," of Supreme
Court decisions as of the time of the relevant state-court
decision. Carey v. Musladin, 127 S. Ct. 649, 653 (2006)
(internal quotations omitted). Moreover, AEDPA has been
interpreted to require a petitioner to show not only that clearly
established federal law was erroneously or incorrectly applied,
but that the application was unreasonable. See Williams, 529
U.S. at 411; see also Lockyer v. Andrade, 538 U.S. 63, 66 (2003);
Bell v. Cone, 535 U.S. 685, 694 (2002). As the Second Circuit
has explained, "[a] state court decision is 'contrary to' Supreme
Court precedent only if it either 'arrives at a conclusion
opposite to that reached by [the Supreme Court] on a question of

law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and arrives at [the opposite result]." Lainfiesta v.Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405). The standards set forth by AEDPA apply to all habeas petitions filed after the statute's effective date of April 24, 1996. See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing Williams, 529 U.S. at 402).

### b. The Confrontation Clause

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to confront and cross-examine witnesses against him. See Crawford v. Washington, 541 U.S. 36, 42 (2004). A trial court, however, may impose limitations on this right. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). In fact, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination." Id. As the Second Circuit has noted, "restrictions on a defendant's presentation of evidence are constitutional if they serve 'legitimate interests in the criminal trial process,' . . . and are 'not arbitrary or disproportionate to the purposes they are designed to serve.'" Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995), aff'd, 71 F.3d 406 (2d Cir. 1995)(quoting United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992)). Furthermore, the Confrontation Clause generally guarantees only "an opportunity for effective cross-examination." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). It does not guarantee

- 15 -

"cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. So long as "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility," cross-examination is not improperly curtailed. United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990) (quoting United States v. Singh, 628 F.2d 758, 763 (2d Cir. 1980), cert. denied, 449 U.S. 1034 (1980)).

### c. Due Process

Habeas courts confronting a due process claim must examine state evidentiary rulings to determine whether those rulings deprived petitioner of a fundamentally fair trial. See Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000); Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). To obtain habeas relief on these grounds, a petitioner "must demonstrate first that the [trial court's evidentiary] ruling was erroneous and, second, that the erroneous ruling 'so infected the proceedings as to have rendered the trial fundamentally unfair.'" Montalvo v. Newton, No. 98 Civ. 8665 (RPP), 2001 WL 1399527, at *2 (S.D.N.Y. Mar. 23, 2001) (quoting Alvarez v. Scully, 833 F. Supp. 1000, 1005 (S.D.N.Y. 1993)). Even if the state court's evidentiary ruling is technically correct, and the evidence would otherwise be inadmissible under the state's rules of evidence, a petitioner may nonetheless be entitled to introduce such evidence if exclusion of the evidence would render his trial fundamentally unfair. See Chambers, 410 U.S. at 302-03.

In determining whether the exclusion of a petitioner's proffered evidence rose to the level of a constitutional violation, a habeas court must ascertain the materiality of the excluded evidence to the petitioner's defense. See Rosario, 839 F.2d at 925. Specifically, the Second Circuit has instructed as follows: "whether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" Jones, 229 F.3d at 120 (quoting Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996)) (alterations in original).

## 2. Application

### a. Refusal to Allow Defense Counsel to Recall Carl Fortner

#### i. Confrontation Clause

Drake claims that the trial court deprived him of his Sixth Amendment right of confrontation by refusing to allow him to recall Fortner after the latter's statement to Pablo Guzman. The trial judge's decision to deny defense counsel's request did not deprive Drake of his confrontation right because the decision served "legitimate interests in the criminal trial process," and was "not arbitrary or disproportionate" to those purposes. See Roberts, 875 F. Supp. at 189 (quoting Almonte, 956 F.2d at 30).

Drake contends that the trial court erred in refusing to recall Fortner because his motive for testifying was a critical issue in the case and because a statement need not be directly contradictory to be admissible for impeachment purposes.

While New York law will allow a statement that is indirectly inconsistent to be admitted in many cases, People v. Wise, 385 N.E.2d 1262, 1265 (N.Y. 1978), not all inconsistent statements must be admitted. Rather, judges have broad discretion to limit evidence that they consider to be prejudicial, irrelevant, or collateral. Van Arsdall, 475 U.S. at 679; People v. Corby, 844 N.E.2d 1135, 1137 (N.Y. 2005); People v. Aska, 697 N.E.2d 172, 173 (N.Y. 1998). Limiting the admission of evidence on such grounds serves "legitimate interests in the trial process." See Corby, 844 N.E.2d at 1137-38 (upholding decision to limit evidence regarding motive to testify when it would confuse the jury and cause speculation); People v. Miller, 349 N.E.2d 841, 846 (N.Y. 1976) (noting the importance of "rivet[ing] the jury's attention on the real issues at trial without undue diversion to collateral matters having little or no bearing on the guilt or innocence of the defendant"); see also Fed. R. Evid. 402, 403. Because statements already on the record indicated Fortner's uncertainty about Drake's innocence, and because Fortner's personal belief about Drake's innocence was not a material issue in the case, the trial judge's decision was not "arbitrary or disproportionate" to the legitimate purposes of limiting the introduction of prejudicial, irrelevant, and collateral evidence.

Furthermore, cross-examination was not improperly curtailed because the jury was in a position to make a "discriminating appraisal" of Fortner's credibility. See Roldan-Zapata, 916 F.2d at 806 (quoting Singh, 628 F.2d at 763). Defense counsel had an opportunity to cross-examine Fortner

- 18 -

regarding his motive to testify and present other impeachment evidence. The jury was aware of Forter's reputation as a hustler, and that his criminal record included twenty-four convictions after 1985 and three recent arrests. (Tr. 400, 412-13). The jury also heard Fortner testify about his convictions for crimes involving fraud, and his knowledge of the $11,000 reward offered in connection with the case. (Id. at 430-31, 440-43). In light of this evidence, even if the trial court erred in refusing to recall Fortner in connection with his statement to the press, this ruling did not limit the jury's ability to make a "discriminating appraisal" of Fortner's credibility. Hence, Drake was not deprived of his Sixth Amendment right of confrontation.

### ii. Due Process

Drake claims that the trial court's refusal to allow defense counsel to recall Fortner also deprived him of his right to due process. This argument is rejected as the evidentiary ruling was not erroneous and the ruling did not deprive Drake of a fundamentally fair trial. See Montalvo, 2001 WL 1399527, at *2; Jones, 229 F.3d at 120.

As noted above, the trial judge's decision to exclude the statement was a legitimate exercise of discretion under New York law. Furthermore, even if the ruling was in error, Drake was not deprived of a fundamentally fair trial because the evidence was not sufficiently material to create a reasonable doubt. Fortner did not recant his testimony regarding statements Drake had made to him in jail. He merely stated his purely speculative

- 19 -

belief as to Drake's innocence. This alleged statement to the press was proffered only as impeachment evidence bearing upon Fortner's motive to testify. The jury had ample reason to question whether Fortner had legitimate motives for testifying. One additional reason to question his motives would not have created a reasonable doubt where there otherwise was none.

## b. **Evidence of Witness A's Psychiatric Condition**

### i. **Confrontation Clause**

Drake claims that by refusing to conduct an in camera inspection of Witness A's psychiatric records and refusing to permit cross-examination regarding her mental health history, the trial court deprived him of his Sixth Amendment right of confrontation. The trial judge's decision to deny these requests served "legitimate interests in the criminal trial process," and was not "arbitrary or disproportionate" to those purposes. See Roberts, 875 F. Supp. at 189 (quoting Almonte, 956 F.2d at 30). Protecting the confidentiality of a witness's psychiatric records serves legitimate interests in the criminal trial process. See N.Y. C.P.L.R. §§ 4504, 4507 (McKinney 2007) (protecting the confidentiality of communications with psychiatrists and psychologists); People v. Arnold, 576 N.Y.S.2d 339, 340 (2d Dep't 1991), leave to appeal denied, 588 N.E.2d 759 (N.Y. 1992) (explaining that courts must balance witnesses' needs for confidentiality against interests of justice).

The records at issue in this case contain information that Witness A shared with her therapist based on an expectation of confidentiality. She had no reason to believe that she would

be forced to share this information if she assisted in a police investigation or testified at a trial. Witness A's interest in maintaining the privacy of her psychiatric records should not be lightly disturbed. The prosecution represented that Witness A suffered from no serious psychiatric problems that would affect her perception, but rather consulted this therapist on only three occasions to discuss "the general issues of her life." Based on this limited showing of relevance, I conclude that the trial judge's decision to limit inquiry into Witness A's psychiatric history was not "arbitrary or disproportionate" to the legitimate purposes of limiting inquiry into confidential psychiatric records.

Furthermore, the jury was in a position to make a "discriminating appraisal" of Witness A's credibility without evidence of her psychiatric condition. See Roldan-Zapata, 916 F.2d at 806 (quoting Singh, 628 F.2d at 763). Defense counsel had the opportunity to examine Witness A about distractions (Tr. 111-12), changes in her description of the perpetrator over time (id. at 115-16), the short period of time during which she observed the perpetrator (id. at 117), and the number of photographs she had viewed to aid in her identification (id. at 129-30). In light of all this information, and the prosecution's representations about the nature of Witness A's therapy, the evidence of Witness A's therapy visits or psychiatric condition was not necessary for the jury to effectively evaluate whether Witness A's testimony regarding the attack was credible. See United States v. Crowley, 318 F.3d 401, 419 (2d Cir. 2003)

(finding that limitation of questioning regarding psychiatric history did not violate confrontation rights where there was no evidence that witness had difficulties in memory or perception and witness was able to perform job duties without incident); Sasso, 59 F.3d at 348 (holding that refusal to admit evidence of psychiatric condition did not violate confrontation rights where there was no evidence that it produced difficulties in memory or perception, and witness was cross-examined about her tendency to overreact and her bias against defendant).

## ii. **Due Process**

Drake claims that by refusing to conduct an in camera inspection of Witness A's psychiatric records and denying defense counsel's request to cross-examine Witness A about her psychological history, the trial court deprived him of his due process right to a fair trial. These arguments are rejected, as the trial court's rulings regarding Witness A's psychological history were not erroneous and the exclusion of this evidence did not deprive Drake of a fair trial. See Montalvo, 2001 WL 1399527, at *2; Jones, 229 F.3d at 120.

Under both federal and New York law, "[e]vidence about a [government witness's] prior condition of mental instability that 'provide[s] some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately' is relevant." United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992) (quoting United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991)); see also Sasso, 59 F.3d at 347-48; People v. Rensing, 199 N.E.2d 489, 491 (N.Y. 1964). A

trial court can properly restrict inquiry into a witness's psychiatric history, however, when the cross-examiner has not demonstrated that there is a reasonable connection between the psychiatric history and any of the facts at issue. See Sasso, 59 F.3d at 347-48; United States v. Friedman, 854 F.2d 535, 571 (2d Cir. 1988), cert. denied, 490 U.S. 1004 (1989); People v. Williams, 591 N.Y.S.2d 390, 391 (1st Dep't 1992), leave to appeal denied, 611 N.E.2d 788 (N.Y. 1993); People v. Walker, 498 N.Y.S.2d 521, 524 (3d Dep't 1986), leave to appeal denied, 494 N.E.2d 131 (N.Y. 1986).

The appropriate procedure "is for the court, after a showing of a reasonable likelihood that the records might contain material bearing on the reliability and accuracy of the witness's testimony, to order production of the records and to inspect them in camera." Arnold, 576 N.Y.S.2d at 340; see also People v. Knowell, 512 N.Y.S.2d 190, 192 (2d Dep't 1987).

In this case, there is ample evidence to support the conclusion that there was no "reasonable likelihood that the records might contain material bearing on the reliability and accuracy of the witness's testimony," and therefore that no in camera inspection was warranted. See Arnold, 576 N.Y.S.2d at 340. Based on the prosecution's representations, the trial judge was satisfied that "this is not a person who suffers from serious psychiatric problems that may affect her perception or that she has delusions or hallucinations. . . . [T]hat she was seeing a therapist . . . just for life issues, does not make this a -- an area that should be explored any further." (PT 62-63).

- 23 -

Drake cites no case in support of the proposition that an in camera inspection of psychiatric records is compelled by due process upon a showing comparable to the one in this case. Rather, the cases requiring in camera inspections involve a far greater showing of materiality than is present here. See, e.g., United States v. Smith, 77 F.3d 511, 516 (D.C. Cir. 1996) (requiring in camera inspection where witness was hospitalized for 18 months for chronic depression and attended a mental health clinic for 4 months); People v. Jackson, 655 N.Y.S.2d 17, 18 (1st Dep't 1997) (mandating in camera inspection of police officer's personnel file where officer was the "sole source" of the prosecution's version of an alleged attempted murder, was acting as if he was working as a bouncer on the night of the incident, and had previously been suspended). Indeed, in People v. Knowell, the Appellate Division found error in the trial court's failure to inspect psychiatric records in camera where the witness had been confined in mental hospitals, diagnosed as a paranoiac, and had a long history of mental problems. 512 N.Y.S.2d at 192. In so holding, the court specifically distinguished the offer of proof at issue from the offer of proof in a previous trial, where the government only revealed that the witness was seeing a psychiatrist. Id. As Knowell elucidates, mere possession of a mental health record by a witness does not mandate an in camera inspection of this record by a trial court, and it was not error for the trial judge to refuse to inspect Witness A's psychiatric records in this case.

I also find no error in the trial court's refusal to allow defense counsel to cross-examine Witness A about her mental health history. A trial court can properly restrict inquiry into a witness's psychiatric history when the cross-examiner fails to demonstrate that there is a reasonable connection between the psychiatric history and any of the facts at issue. See Sasso, 59 F.3d at 347-48; Friedman, 854 F.2d at 571; Williams, 591 N.Y.S.2d at 391; Walker, 498 N.Y.S.2d at 524. According to the Second Circuit, "in assessing the probative value of such evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to testify." Sasso, 59 F.3d at 347-48. The court should also "give consideration to a witness's privacy interests as an important factor to be weighed in the balance in considering the admissibility of psychiatric histories." Doe v. Diamond, 964 F.2d 1325, 1329 (2d Cir. 1992).

As discussed above, Witness A had a significant privacy interest in maintaining the confidentiality of psychiatric information that she shared with her therapist on the assumption that it would be revealed to no one. Because there was an insufficient showing of the relevance of Witness A's psychiatric condition to overturn the trial judge's refusal of an in camera inspection of her psychiatric records, I find no error in the trial judge's determination that any probative value of Witness A's testimony on this subject would be outweighed by the intrusion of her privacy.

Even if the lower court did err in refusing to conduct an in camera inspection of Witness A's psychiatric files or refusing to allow cross-examination regarding her mental health history, a habeas writ will only issue if petitioner was deprived of a fundamentally fair trial. Montalvo, 2001 WL 1399527, at *2; Jones, 229 F.3d at 120. For the reasons discussed above, I find that the jury was in a position to make a discriminating appraisal of Witness A's credibility, and do not find that information about Witness A's three therapy visits would have caused the jury to discredit her testimony so as to create a reasonable doubt that did not otherwise exist. See Sasso, 59 F.3d at 348 (finding no suggestion that evidence of psychiatric condition had probative value where there was no indication that it produced difficulties in memory or perception, and witness was cross-examined about her tendency to overreact and her bias against defendant); Lugo v. Edwards, No. 97 Civ. 7789 (DC), 1998 WL 601080, at **4-5 (S.D.N.Y. Sept. 9, 1998) (finding that, although witness had suffered a panic attack during the robbery at issue in the case, trial court's decision to limit inquiry into her psychiatric history was insufficient to create a reasonable doubt that did not otherwise exist).

Hence, the trial court's decision to restrict cross-examination with respect to Witness A's psychiatric history and refusal to inspect her psychiatric records in camera did not violate Drake's confrontation or due process rights, and accordingly, this ground for habeas relief is rejected.

## CONCLUSION

For the foregoing reasons, the petition for a writ of
habeas corpus is denied. Because petitioner has not made a
substantial showing of the denial of a constitutional right, I
decline to issue a certificate of appealability. See 28 U.S.C. §
2254 (as amended by AEDPA). I certify pursuant to 28 U.S.C. §
1915(a)(3) that any appeal taken from this decision would not be
in good faith.

The Clerk of the Court shall is directed to enter
judgment accordingly and to close this case.

SO ORDERED.

Dated:   New York, New York
         April 10, 2008

DENNY CHIN
United States District Judge